USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/9/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

C.D., individually and on behalf of W.D.,

                                Plaintiff,

              -v-

MINISINK VALLEY CENTRAL SCHOOL DISTRICT,

                            Defendant.

------------------------------------------------------------------X

17 Civ. 7632 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This decision resolves plaintiff's motion for attorneys' fees and costs incurred in connection with an action brought under the Individuals with Disabilities Education Act of 1990 ("IDEA"), 20 U.S.C. § 1400 *et seq.*[1]

Plaintiff, C.D., a parent of a student, W.D., in the Minisink Valley Central School District ("MVCSD") brought a due process claim individually and on behalf of W.D. against the school district under the IDEA. C.D. alleged that MVCSD had violated the IDEA by failing to provide W.D. a free appropriate public education ("FAPE"), through actions that kept W.D. out of a traditional classroom environment and that required W.D. to spend an extended amount of time on a bus going to an alternate education program, Board of Cooperative Educational Services ("BOCES"), each day. Dkt. 25 ("Walsh Supp. Decl.") ¶¶ 6–8.

In February 2017, after 11 days of hearings spanning five months, the Impartial Hearing Officer ("IHO") issued a decision in favor, in substantial part but not wholly, of C.D. Dkt. 10-3

---

[1] The Individuals with Disabilities Education Improvement Act, Pub. L. No. 108–446, 118 Stat. 2647 (2004), reauthorized (and amended) the IDEA. This opinion refers to the updated version of the statute as the IDEA.

("IHO Opinion"). MVCSD appealed the decision to the State Review Officer ("SRO") for the New York Department of Education and C.D. cross-appealed. Dkt. 10-4 ("SRO Opinion") at 1; Compl. ¶¶ 24–25. On May 17, 2017, the SRO dismissed MVCSD's appeal and sustained the cross-appeal, increasing C.D.'s award. SRO Opinion at 1.

On September 13, 2017, counsel for C.D. filed suit before this Court, seeking attorneys' fees and costs from MVCSD, on the grounds that C.D. had been the "prevailing party" in the underlying administrative proceedings pursuant to the IDEA. Walsh Supp. Decl. ¶ 68. C.D. has requested a total award of $202,016 in attorney and paralegal fees and related costs. Dkt. 12 ("Cuddy Decl.") Exs. 1–2, 6. MVCSD does not dispute in principle C.D.'s entitlement to fees, but argues that C.D.'s award should be substantially below that sought by C.D., to reflect C.D.'s partial but not complete success below, and to reflect lower hourly rates and fewer countable hours by legal personnel. Dkt. 23 ("MVCSD Opp. Br.") at 1–2.

The award of attorneys' fees and costs under the IDEA is committed to the discretion of the district court. *See* 20 U.S.C. § 1415(i)(3)(B)(i)(l); *K.F. v. N.Y. City Dep't of Educ.*, No. 10 CIV. 5465 PKC, 2011 WL 3586142, at *1 (S.D.N.Y. Aug. 10, 2011), *adhered to as amended*, No. 10 CIV. 5465 PKC, 2011 WL 4684361 (S.D.N.Y. Oct. 5, 2011). After reviewing carefully the parties' submissions, the Court awards C.D. most, although not all, of the requested fees.

## I.      Background

### A.      The IDEA Action Initiated by C.D.

C.D. is the parent of a child, W.D., with autism, a disability that is covered by the IDEA. Compl. ¶ 10. At the time of the initial impartial due process hearing request, W.D. was a second-grade student in the MVCSD. *Id.* ¶ 9.

On January 26, 2015, C.D. filed an impartial due process hearing request under the IDEA, alleging that MVCSD had failed to provide W.D. with an adequate Individualized Education Plan ("IEP"). Compl. ¶ 11. C.D. twice amended his request, styled as a complaint, to reflect changes in the recommendations by the Committee on Special Education ("CSE") assigned to W.D.'s case. Walsh Supp. Decl. ¶¶ 16, 27.

In his amended complaint, C.D. sought (1) a finding that MVCSD had denied W.D. a FAPE for the 2013–14, 2014–15, and 2015–16 school years, (2) new CSE recommendations for a small-class setting and behavior support, and (3) compensatory services in the form of orders directing that W.D. receive funded tutoring and speech/language instruction to compensate for previous denial of a FAPE. Compl. ¶ 14; *see* Dkt. 10-1 at 1; IHO Opinion at 7–8. The main objective of the hearing request was to keep W.D. in the public school classroom setting, rather than sending him to BOCES, which would require W.D. to spend extensive time on the bus each day. Walsh Supp. Decl. ¶¶ 51, 52. Before the IHO had rendered a decision on the merits, C.D. withdrew one part of his claims—specifically, that the school district had denied W.D. a FAPE for the 2015–16 school year. SRO Opinion at 11; IHO Opinion at 7–8. During this process, and continuing through the present litigation, C.D. was represented by the Cuddy Law Firm, LLC, which C.D. retained in January 2015. Walsh Supp. Decl. ¶ 6.

### B. Proceedings before the IHO and SRO

On May 5, 2015, before any hearings were held, counsel for C.D. proposed a settlement of the IDEA claims, under which MVCSD would pay $15,000 to C.D in attorneys' fees; counsel for MVCSD did not respond. *Id.* ¶¶ 24–26. On September 15, 2015, a series of hearings in front of the IHO began; in total, 11 were held, ending in February 2016. Dkt. 22 ("Rushfield Affirmation") Exs. D–N. The hearings were attended by representatives for both C.D. and

MVCSD, averaging three attendees on each side. *See* IHO Opinion at 2–6. The hearings involved hundreds of pages of exhibits and multiple interviews of witnesses, in which counsel for both C.D. and MVCSD participated. *Id.* at 60–69; Compl. ¶¶ 16–17. Closing briefs were filed in April 2016. Rushfield Affirmation ¶ 17.

On February 13, 2017, the IHO issued a split decision. Compl. ¶ 18; IHO Opinion. The IHO found that MVCSD had provided W.D. with a FAPE for the 2013–14 school year, but that it had denied W.D. a FAPE for the 2014–15 school year. IHO Opinion at 49, 54. The IHO also granted W.D. compensatory services in the form of 100 hours of tutoring to compensate for the district's denial of a FAPE. IHO Opinion at 56–57. MVCSD appealed the decision to the New York Department of Education's Office State Review. C.D. cross-appealed. SRO Opinion at 1.

On May 17, 2017, the State Review Officer ("SRO") dismissed MVCSD's appeal and sustained the cross-appeal, increasing C.D.'s award. *Id.* The SRO found that MVCSD had also failed to provide a FAPE for the 2013–14 school year in addition to the 2014–15 school year. *Id* at 44. The SRO increased the award of compensatory services to 135 hours. *See id.* at 45.

### C.     C.D.'s Fees Action in this Court

C.D.'s retainer agreement with the Cuddy Law Firm provided that C.D. was required to pay the firm $6,000 across three installments, with the remainder of the legal fees to be covered by the fee-shifting provisions of IDEA. *See* Walsh Supp. Decl., Ex. C ("Retainer Agreement").

On October 5, 2017, C.D., through counsel, consistent with the fee-shifting portion of the retainer agreement, filed a Complaint in this Court, seeking reasonable attorneys' fees and costs under the IDEA. Compl. After MVCSD initially failed to appear, the Clerk of Court granted C.D.'s request for an entry of default, and, on December 15, 2017, counsel for C.D. filed a motion for default judgment. Dkts. 8, 9; *see also* Dkt. 13 ("C.D. Br."). The Court set a hearing

for February 2, 2018. Dkt. 9, 14. On January 22, 2018, MVCSD filed a notice of appearance. Dkt. 16.

With the consent of both parties, the Court converted C.D.'s motion for default judgment into one for reasonable attorneys' fees and costs under the IDEA. Dkt. 20. In the order that the Court issued on consent, the Court held that "[t]he plaintiff is a prevailing party as concerns the administrative proceedings below and is, thereby, entitled to an award of reasonable attorney fees and costs for the administrative proceedings before the Impartial Hearing Officer and State Review Officer and the proceedings before this Court." *Id.*

## II.    Applicable Legal Principles

"The IDEA aims 'to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs.'" *A.R. ex rel. R.V. v. N.Y. City Dep't of Educ.*, 407 F.3d 65, 72 (2d Cir. 2005) (quoting 20 U.S.C. § 1400(d)(1)(A)). States that receive certain federal funds must "offer parents of a disabled student an array of procedural safeguards designed to help ensure the education of their child." *Polera v. Bd. of Educ.*, 288 F.3d 478, 482 (2d Cir. 2002). Parents are entitled to bring complaints regarding the "provision of a free appropriate public education" to their child, 20 U.S.C. § 1415(b)(6), and to have those complaints heard by an IHO, *see id.* § 1415(f)(1); N.Y. Educ. L. § 4404(1); *see also A.R.*, 407 F.3d 65, 72.

"In the United States, parties are ordinarily required to bear their own attorney's fees— the prevailing party is not entitled to collect from the loser." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 602 (2001) (citation omitted). However, under the IDEA, if a parent of the child with a disability is the "prevailing party" in the litigation, the district court has discretion to award the parent "reasonable attorneys' fees" and

costs incurred. 20 U.S.C. § 1415(i)(3)(B)(i); *see also J.C. v. Reg'l Sch. Dist. 10, Bd. of Educ.*, 278 F.3d 119, 121 (2d Cir. 2002). The award may cover work performed before (1) the IHO, (2) the SRO, (3) the district court, and (4) on appeal to the circuit court of appeals. *See A.R.*, 407 F.3d at 84 (affirming award of fees incurred during IHO proceedings and before district court, and remanding for consideration of whether, under the facts of the case, fees should be awarded for attorney work during Second Circuit appeal); *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 437 (S.D.N.Y. 2012) (awarding fees for work conducted in SRO proceeding). Prevailing parties are also entitled to reimbursement for the reasonable costs incurred in litigating an IDEA case. *Id.* at 443.

To determine the award and the amount of fees, the court must engage in a two-step inquiry. First, the court must determine whether the party seeking to enforce the fee-shifting provision is the "prevailing party." *Mr. L. v. Sloan*, 449 F.3d 405, 405–07 (2d Cir. 2006). Second, the court must determine if the party "should be awarded attorneys' fees." *Id.* In calculating fees, the court examines whether the fees are reasonable in light of the litigation. *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). The district court has the discretion to reduce the award if the fees or hours reported are excessive or misleading. *Id.* at 437.

### A.     Prevailing Party

To be a prevailing party under the IDEA, a plaintiff must achieve (1) "some material alteration of the legal relationship of the parties" that is (2) "judicially sanctioned." *A.R.*, 407 F.3d at 67. The Second Circuit has held that a party who receives agency-ordered relief on the merits of their claim is a "prevailing party" for the purposes of IDEA. *Id.* at 75. A party need not recover on all of its claims in order to be considered the "prevailing party." *K.L. v. Warwick Valley Cent. Sch. Dist.*, No. 12 CIV 6313 DLC, 2013 WL 4766339, at *5 (S.D.N.Y. Sept. 5,

2013), *aff'd* 584 F. App'x 17 (2nd Cir. 2014). However, "it must succeed on a significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.*

**B.      Calculation of Fees**

The starting point for determining the presumptively reasonable fee award is the "lodestar" amount, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). The lodestar is not "conclusive in all circumstances," and may be adjusted when it fails to "adequately take into account a factor that may properly be considered in determining a reasonable fee." *Id.* at 167.

**1.      Reasonable Hourly Rates**

Under the fee-shifting provision of the IDEA, the court determines a reasonable hourly rate "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). A reasonable rate is one a reasonable, paying-per-hour client would pay for the same services rendered. *K.F.*, 2011 WL 3586142, at \*3 (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2nd Cir. 2008)). The community used for purposes of IDEA fee-shifting litigation is the district in which the issue arose—specifically, where the student was denied a FAPE. *Id.* at \*2. However, in determining reasonable hourly rates, it is also important to look to the area of legal practice at issue. That is because legal markets are today so interconnected that it is no longer meaningful, in assessing a reasonable rate, to look at geographic location alone. *See Arbor Hill*, 522 F.3d at 192.

In determining a reasonable rate, district courts are also to consider case-specific variables known as the "*Johnson* factors." These include:

7

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186–87. "A district court need not recite and make separate findings as to all twelve *Johnson* factors, provided that it takes each into account in setting the attorneys' fee award." *E.F. ex rel. N.R. v. N.Y. City Dep't of Educ.*, No. 11 CIV. 5243 GBD FM, 2014 WL 1092847, at *3 (S.D.N.Y. Mar. 17, 2014) (internal citations omitted).

## 2. Reasonable Hours

Once a reasonable rate of pay has been calculated, it is multiplied by a reasonable number of hours expended to determine the award amount. In this process, the court has the discretion to disregard hours viewed as "excessive, redundant, or otherwise unnecessary." *Bliven v. Hunt*, 579 F.3d 204, 213 (2nd Cir. 2009) (quoting *Hensley*, 461 U.S. at 434).

## C. Costs

A district court may also award reasonable costs to the prevailing party. 20 U.S.C. § 1415(i)(3)(B)(i)(I). The term "costs" includes costs incurred in connection with work yielding fees covered by a fee award,[2] as well as the specific types of costs set out in 28 U.S.C. § 1920, the general provision governing the taxation of costs in federal court. *See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 297–98 (2006)); *G.B. ex rel. N.B. v. Tuxedo Union*

---

[2] The principles articulated in *LeBlanc–Sterneberg v. Fletcher*, 143 F.3d 748 (2d Cir. 1998), control as to out-of-pocket expenses that are not expert-witness fees. There, the Second Circuit held that an attorney's fee award includes those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients. *See M.K. ex rel. K. v. Sergi*, 578 F. Supp. 2d 425, 433–34 (D. Conn. 2008).

*Free Sch. Dist.*, 894 F. Supp. 2d 415, 443 (S.D.N.Y. 2012). Commonly compensable costs include reasonable filing and process server costs. *See* 28 U.S.C. § 1920; *G.B.*, 894 F. Supp. 2d at 443; *M.K.*, 578 F. Supp. 2d at 434.

## III. Discussion

### A. Overview of C.D.'s Fee and Cost Requests

It is undisputed that C.D. prevailed in the proceedings before the IHO and SRO. Dkt. 20 ¶ 1. C.D. obtained relief from the IHO, which was affirmed and expanded before the SRO. The sole issue before this Court is whether the fees and costs C.D. has requested are reasonable. As to both fees and costs, C.D. seeks compensation both for work performed before the IHO and SRO, which the Court refers to as the "administrative proceedings," and for work in this follow-on fees litigation.

As to the administrative proceedings, C.D. seeks fees to reflect hours worked by three attorneys (Andrew Cuddy,[3] Jason Sterne, and Jacqueline Walsh) and three paralegals (Diane Aughtmon, Shobna Cuddy, and Sarah Woodard). Before the IHO, Walsh served as lead counsel. Dkt. 11 ("Walsh Decl.") ¶¶ 4–5; she led hearing preparation, communicated with other parties and participants, and drafted motions, while Sterne took primary responsibility for conducting hearings and examining witnesses, although in one hearing, Cuddy filled in for Sterne. *See*

---

[3] The Court's references to "Cuddy" are to Andrew Cuddy. The Court refers to Shobna Cuddy by full name.

Sterne Decl., Exs. D–N.[4]  Sterne took the lead on the appeal to the SRO.  Walsh Decl. ¶ 5.  The

fees C.D. seeks for the administrative proceedings are summarized below.[5]

| Attorneys' Fees: Administrative Proceeding | | | |
|---|---|---|---|
| **Attorney** | **Rate** | **Hours** | **Total** |
| Andrew Cuddy, Esq. | $450.00 | 14.70 | $6,615.00 |
| Jason Sterne, Esq. | $450.00 | 129.70 | $58,365.00 |
| Jacqueline Walsh, Esq. | $350.00 | 238.70 | $83,545.00 |
| **Total** | | **383.1** | **$148,525.00** |
| **Paralegal Fees: Administrative Proceeding** | | | |
| **Paralegal** | **Rate** | **Hours** | **Total** |
| Diane Aughtmon | $150.00 | 41.70 | $6,255.00 |
| Shobna Cuddy | $150.00 | 12.70 | $1,905.00 |
| Sarah Woodard | $150.00 | 12.50 | $1,875.00 |
| **Total** | | **66.90** | **$10,035.00** |

C.D. also seeks fees for the travel by attorneys Cuddy, Sterne, and Walsh, including

travel to and from the IHO and SRO hearings.  C.D., however, consistent with the case law,

requests that that travel be compensated at half of each attorney's billable rate.

| Attorneys' Travel Fees: Administrative Proceeding | | | |
|---|---|---|---|
| **Attorney** | **Rate** | **Hours** | **Total** |
| Andrew Cuddy Travel | $225.00 | 4.90 | $1,102.50 |
| Jason Sterne Travel | $225.00 | 38.40[6] | $9,315.00 |
| Jacqueline Walsh Travel | $175.00 | 68.05 | $11,908.75 |
| **Total** | | **114.35** | **$21,223.75** |

As to the fee award that C.D. seeks for litigation before this Court, Sterne served as lead

attorney, with assistance from Cuddy (including in connection with pursuing a default judgment

---

[4] C.D. has, rightly, not requested fees for several other attorneys and staff whose involvement in these proceedings was very limited.  Cuddy Decl. ¶ 38.

[5] This chart is adapted from Exhibit B to the Cuddy declaration.  The Court has confirmed from its review of the sheets submitted that the figures on this chart capture only the hours worked in connection with the administrative phase of this case, not in the litigation before this Court.

[6] This total reflects a 3-hour reduction for the self-reported error for Sterne's travel on 11/5/15. Dkt. 27, at 1.

and with review of underlying billing records) and Walsh (who reviewed records and conducted research). *See* Cuddy Decl., Ex. 6. The chart below captures the fee request for this phase:

| Attorneys' Fees: SDNY | | | |
|---|---|---|---|
| **Attorney** | **Rate** | **Hours** | **Total** |
| Andrew Cuddy, Esq. | $450.00 | 2.3 | $1,035.00 |
| Jason Sterne, Esq. | $450.00 | 13.5 | $6,075.00 |
| Jacqueline Walsh, Esq. | $350.00 | 3.5 | $1,225.00 |
| **Total** | | **19.3** | **$8,335.00** |
| Paralegal Fees: SDNY | | | |
| **Paralegal** | **Rate** | **Hours** | **Total** |
| Shobna Cuddy | $150.00 | 0.4 | $60.00 |
| **Total** | | **19.7** | **$8,395.00** |

C.D. also seeks reimbursement for costs incurred during both phases. The costs incurred during the administrative proceedings are summarized below. In addition, C.D. seeks reimbursement for $39.50 for printing costs and $110.00 for process service costs. Dkt. 24-2.

| Costs: Administrative Proceeding | |
|---|---|
| **Expense** | **Total** |
| Copy / page | $5,064.50 (at cost of $0.50 per page) |
| Meal | $1,346.47 |
| Mileage | $1,721.54 |
| Lodging | $3,745.76 |
| Process Server | $250.00 |
| Parking | $18.00 |
| Records Fee | $500.00 |
| Postage | $88.66 |
| **Total** | **$12,734.93** |

The Court begins by determining the reasonable hourly rates for the relevant timekeepers. The Court then addresses MVCSD's challenges to certain hours billed. Finally, the Court addresses MVSCD's request for an across-the-board reduction in fees due to C.D.'s less than complete success below, and the request for costs.

## B.     Reasonable Rates[7]

The relevant community for the purposes of determining a reasonable rate is the Southern District of New York, where both this litigation and the underlying administrative proceedings are centered.[8]  The relevant practice area is special education law, including IDEA litigation.

### 1.     Cuddy and Sterne

C.D. seeks an hourly rate of $450 for attorneys Cuddy and Sterne.  Dkt. 13 at 8.  MVCSD argues that the hourly rate for Cuddy and Sterne should be $375.  MVCSD Opp. Br. at 6.  Both Cuddy and Sterne are experienced attorneys in special education law.  Cuddy is a 1996 law school graduate who has been litigating special education matters since 2001.  Cuddy Decl. ¶¶ 26–31.  Sterne is a 1996 law school graduate who has been practicing special education law for more than 10 years.  Sterne Decl. ¶¶ 59–66.

---

[7] Although the Court does not address all of the *Johnson* factors in its analysis, for each attorney, it has considered each factor.  The Court makes the following observations, which have global application.  First, as to the second *Johnson* factor, although IDEA litigation is undoubtedly a specialized field in which attorneys seek to vindicate vitally important interests of children in need of special education, plaintiffs have not put forth evidence to suggest that this case presented novel or complex legal issues relative to the typical single-plaintiff IDEA case.  *See S.A. ex rel. M.A.K. v. New York City Dep't of Educ.*, No. 12-CV-435 RMM MDG, 2015 WL 5579690, at *5 (E.D.N.Y. Sept. 22, 2015) ("[T]he severity of S.A.'s autism and other intervening behaviors does not, in itself, make this case more complex or difficult; such conditions are not unusual in cases brought under the IDEA.").  On the other hand, as C.D. notes, this case appears to have featured more hearings and a greater overall timespan before administrative bodies, and may have involved more witnesses, than do many IDEA cases.  The Court has considered these factors in assessing both the proper hourly rates and the hours for which compensation is appropriate.

[8] The Cuddy Law Firm is based in the Northern District of New York.  However, "an out-of-district attorney may be entitled to receive a higher rate when practicing in this district than the rate the (sic.) he or she ordinarily receives in the community in which he or she usually practices." *K.F.*, 2011 WL 3586142, at *2.

C.D.'s proposed hourly rate for Cuddy and Sterne falls within the range of rates approved by courts in this District as reasonable. In this District, rates approved for experienced attorneys in IDEA fee-shifting cases have tended to be between $350 and $475 per hour. *See, e.g., E.S. v. Katonah-Lewisboro Sch. Dist.*, 796 F. Supp. 2d 421, 430 (S.D.N.Y. 2011) ($350); *M.C.*, 2013 WL 2403485, at *6 ($375); *T.K. ex rel. L.K. v. N.Y. City Dep't of Educ.*, No. 11 CIV. 3964 JPO, 2012 WL 1107660, at *5 (S.D.N.Y. Mar. 30, 2012) ($415); *E.F.*, 2014 WL 1092847, at *4 ($475; attorney specialized in autism-related IDEA litigation).

In 2011, fees for Cuddy and Sterne themselves were approved in this District at an hourly rate of $375. *K.F.*, 2011 WL 3586142, at *6. While that approved rate is instructive, some four or more years passed between 2011 and 2015–2016, when the bulk of work at issue here was undertaken. Further, the Cuddy Law Firm has grown substantially since that time, a relevant factor in assessing its members' reasonable rates. Cuddy Supp. Decl. ¶¶ 31, 33, 34 ("At the time of the hearing in *K.F.*, the Law Office of Andrew Cuddy had just one office, in Auburn, New York, and four attorneys. In 2018, the Cuddy Law Firm has offices in Auburn, White Plains, Cleveland, Austin, Philadelphia, and Charlotte," and employs 24 attorneys); *see also Tatum v. City of New York*, No. 06-CV-4290 PGG GWG, 2010 WL 334975, at *4 (S.D.N.Y. Jan. 28, 2010) ("The size of the firm may also be considered as a factor if it would affect the hourly rate, primarily due to varying overhead costs." (quotation marks omitted)). In light of the passage of time and the growth of the firm, the Court's judgment is that $400 is a reasonable hourly fee, in this case, for these two highly experienced lawyers.

### 2. Walsh

C.D. seeks an hourly rate of $350 for associate Walsh, who served as the lead attorney and billed by far the most hours during the administrative proceedings. Walsh Decl. ¶ 12; Cuddy

Decl. ¶ 38; Cuddy Decl., Ex. B. Walsh is a 1997 law school graduate who has been employed at the Cuddy Law Firm since 2012. Walsh Decl. ¶¶ 8, 10. She presently specializes in special education law and has apparently so specialized since joining the firm. *Id.* ¶ 10.[9]

C.D.'s proposed rate for Walsh is above the range of rates typically approved by courts in this District for junior associates in IDEA litigation. For associates with three or fewer years of experience in such litigation, courts in this District have typically approved rates of $150–$275. *See J.S. ex rel. Z.S. v. Carmel Central Sch. Dist.*, No. 10 CIV 8021 VB, 2011 WL 3251801, at *6 (S.D.N.Y. Jul. 26, 2011) (awarding first- and second-year associates rates of $150 to $175 per hour in IDEA litigation); *LV v. N.Y. City Dep't of Educ.,* 700 F. Supp. 2d 510, 519–20 (S.D.N.Y. 2010) (awarding $275 for a junior attorney with one to three years of experience).

---

[9] C.D. submitted affidavits from attorneys who did not participate in this litigation that support billing rates of between $300 and $400 for associates with multiple years of special education law experience. *See* Cuddy Decl., Ex. E at 12 (Declaration of Gina M. DeCrescenzo), ¶ 7 ("[A] 2012 graduate and special education attorney within my office[] bills at a rate of $300 per hour . . . [A] 2006 graduate and special education attorney in my office[] bills at a rate of $400 per hour."); Cuddy Decl., Ex. D at 16, 18 (Declaration of Jeffrey Marcus), ¶¶ 23, 32 (attesting that his firm bills associates with special education experience at a rate of $315–325 per hour). C.D. submitted similar affidavits in support of C.D.'s requested fees for Cuddy, Sterne, Aughtmon, Shobna Cuddy, and Woodard. MVCSD has not submitted similar documentation.

The Court declines to rely on these affidavits. They provide isolated examples of billing rates of a few lawyers who may or may not be representative of the field. Moreover, these affidavits were prepared in support of a fee application in a different litigation. *See* Cuddy Decl. ¶ 43 ("Attached hereto as Exhibit E is a set of declarations submitted in the matter *M.D. v. New York City Department of Education*, 17 Civ. 2417"). C.D. has not offered context as to that litigation that enables the Court meaningfully to assess whether the work there was fairly analogous to that here, or whether the rates those attorneys "bill at" reflect fees actually paid by clients. *See M.C. ex rel. E.C. v. Dep't of Educ. of City of New York*, No. 12 CIV. 9281 CM AJP, 2013 WL 2403485, at *7 (S.D.N.Y. June 4, 2013) ("[T]he Court is unpersuaded by plaintiff's attempt to establish a higher hourly rate by submitting other attorneys' affidavits prepared in connection with other, distinguishable cases."), report and recommendation adopted, No. 12 CIV. 9281 CM AJP, 2013 WL 3744066 (S.D.N.Y. June 28, 2013).

Nevertheless, the Court is of the view that an appropriate fee award for Walsh is properly set above the upper end of this range set by these cases. That is because, although Walsh is relatively new to the field of special education litigation, she has far more generalist legal experience, with more than 10 years of experience practicing law. And as the Second Circuit has recognized, "the most important legal skills are transferrable." *I.B. v. N.Y. City Dept. of Educ.*, 336 F.3d 79, 81 (2d Cir. 2003). In this case, the Court finds the decision reasonable to have staffed this matter with lawyers who have deep expertise in IDEA litigation (Sterne and Cuddy) and with a lawyer who had—in addition to several years' IDEA expertise—additional experience as a generalist litigator. All *Johnson* factors considered, the Court's judgment is that it is appropriate to assign a $300 hourly rate to Walsh's work in this matter.

### 3. Aughtmon, Shobna Cuddy, and Woodard

C.D. seeks an hourly rate of $150 for paralegals Aughtmon, Shobna Cuddy, and Woodard. Dkt. 13 at 8; Sterne Decl., Ex. B at 1. MVCSD urges an hourly rate of between $100 and $125. MVCSD Opp. Br. at 11. Both Aughtmon and Woodward have bachelor's degrees and have been working as paralegals or legal assistants for more than a decade. Cuddy Decl. ¶¶ 10–14. C.D. has not supplied information as to Shobna Cuddy's experience or qualifications.

C.D.'s proposed hourly rate exceeds the prevailing rate as reflected in decisions in this District. Previous such decisions involving the Cuddy Law Firm approved fee awards using rates for paralegal work ranging from $90 to $125. *See, e.g., K.L.*, 2013 WL 4766339, at *9 (holding $90 a reasonable rate for a paralegal); *K.F*, 2011 WL 3586142, at *5 (holding $125 a reasonable rate for an experienced paralegal). Other cases have similarly approved fee awards using paralegal rates ranging from $90 to $125. *See, e.g., T.K.*, 2012 WL 1107660, at *7.

The Court finds that $125 is a reasonable rate for work by an experienced paralegal in this matter. The Court will therefore apply that rate to Aughtmon and Woodard's work.

However, as to Shobna Cuddy, the Court cannot approve such a rate. C.D. bears the burden of providing evidence to support his fee application, including as to the timekeeper's relevant qualifications. *See Torres v. City of New York*, No. 07 CIV. 3473 GEL, 2008 WL 419306, at *2 (S.D.N.Y. Feb. 14, 2008) ("Although it is his burden to do so, plaintiff presents no evidence regarding the skills, qualifications, or experience of the paralegal here."). When such evidence has not been provided, courts typically award fees at the bottom of the customary fee range. *See L.V. v. New York City Dep't of Educ.*, 700 F. Supp. 2d 510, 523 (S.D.N.Y. 2010) ("If plaintiffs had provided no information about the paralegals' levels of experience, an award at the lower end of the range might be appropriate."); *Robinson v. City of New York*, No. 05 CIV. 9545 (GEL), 2009 WL 3109846, at *5 (S.D.N.Y. Sept. 29, 2009) ("While defendants are correct that the burden is on the moving party to show that the requested fees are reasonable, plaintiffs' request of $100 per hour is on the low end of the customary range in this district and therefore commensurate with the presumed inexperience of plaintiffs' paralegal staff"); *Torres*, 2008 WL 419306, at *2 (noting that "compensation must be made near the lower end of the market range" given the lack of evidence regarding paralegal's qualifications). While the Court may properly infer from the evidence submitted that Shobna Cuddy was in fact employed as a paralegal at the Cuddy Law Firm and performed paralegal service, there is no evidence upon which the Court may infer that she had anything beyond entry-level qualifications. The Court therefore approves, for her work, a $100 hourly rate, the bottom end of the range proposed by MVCSD.

### C.    Reasonable Hours

This IDEA litigation was more protracted than some. The IHO hearing occupied 11 hearing dates, at which 11 witnesses were questioned, 178 exhibits were received, and more than 500 pages of submissions were made by each party. Sterne Decl. ¶¶ 44–45. Exclusive of travel time, C.D.'s attorneys represent that they spent a total number of 383.1 attorney hours on this matter in preparation for and during the administrative proceedings. They also seek compensation for 19.7 documented hours on litigation before this Court. MVCSD objects in various respects to the hours for which C.D. seeks compensation. Its objections concern allegedly improper billing practices, billing for travel, billing for IEP meetings, and billing incurred in connection with seeking a fee award in this Court. The Court considers these objections in turn.

### 1.    Improper billing practices

MVCSD assails the Cuddy firm's reported hours, claiming in the following omnibus paragraph that the firm's hours were inflated by these 10 improper billing practices:

> (1) failing to set forth evidence of necessity of services, (2) duplication of services, (3) block billing of services so that it cannot be determined whether a reasonable time was dedicated to a service and including non-billable services with billable services in such service billings, (4) billing paralegal or attorney time for clerical or office administration tasks, (5) vague entries, (6) claiming a service that was evidently not performed, (7) the firm's practice of billing for multiple attorneys and paralegals involved in internal conferences or discussions, (8) excessive communication with co-counsel, (9) the practice of counsel and paralegals in billing a plethora of 0.1 hour services for minor tasks of minimal duration and (10) billing for time spent by senior attorneys that should have been performed by lower-billing attorneys or time spent by attorneys for functions that should have been performed by paralegals.

MVCSD Opp. Br. at 16. MVCSD attempts to substantiate these broad critiques in the Rushfield Affirmation.

However, a thorough review of the record, including the applicable billing records, reveals that C.D.'s attorneys simply did not engage in many of these practices in a repeated or unreasonable manner. There is no occasion to address each of these claims individually.[10] The Court focuses here only on the several that it finds worthy of analysis, ultimately finding only one to have merit as a basis for a reduction in hours.

**0.10 hour billing increments**: MVCSD claims that C.D.'s attorneys abused the practice of billing in increments of 0.10 hours. The practice of billing a tenth of an hour for a discrete task is not inherently problematic. But, when an attorney on a single day bills multiple 0.10 hour entries for discreet tasks, where the tasks individually appear likely to have occupied less than 0.10 hours and in total appeal likely to have occupied less than the sum total of the 0.10 hour increments, such a practice can improperly inflate the number of hours billed beyond what is appropriate. *See, e.g., Jara v. P.N. Fin., Inc.*, No. 10 CIV. 6274 PAE HBP, 2014 WL 4388515, at *9 (S.D.N.Y. Sept. 4, 2014) ("[E]xtensive documentation of these administrative tasks appears to be designed to inflate the total number of hours billed by attributing a separate 6 minutes to each brief task."), report and recommendation adopted, No. 10 CIV. 6274 PAE HBP, 2014 WL 5100222 (S.D.N.Y. Oct. 10, 2014). Decisions in this District have reduced reasonable hours for this offense, because often "such tasks need not be performed by an attorney and, often, may be performed in a (sic.) 1 to 2 minutes if not instantaneously." *Id.*

---

[10] The Court has not found repeated or unreasonable instances of block billing, vague entries, excessive billing for clerical tasks, or claims for services that were not performed. In considering the claim of block billing, the Court used the same approach it has in other cases, in which it has considered making reductions in fees to reflect block-billing where the block-billed entries covered 5.0 or more hours in a given day. *See, e.g., Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 53 (S.D.N.Y. 2015) (considering but declining to make reductions in block-billed entries that exceeded five hours when the entries were sufficiently detailed); *Charles v. City of New York*, No. 13 CIV. 3547 PAE, 2014 WL 4384155, at *6 (S.D.N.Y. Sept. 4, 2014) (reducing fee award based on block billed entries of around six or seven hours).

This critique by MVCSD has merit. The Cuddy firm's billing records reflect a number of occasions where a single timekeeper, Walsh, on the same day, reported multiple billing entries for 0.10 hour, for tasks that appear quite quick to accomplish.

Upon examination of the billing record, Walsh had a number of instances of this practice. On January 28, 2016, for example, the firm's billing records reflect that she billed four discreet 0.10 entries, which report tasks including: the sending of an email confirmation, a telephone call, and an additional email and response. Cuddy Decl., Ex. A at 50. Similarly, on March 14, 2017, the billing record reflects three 0.10 entries by Walsh, describing seemingly fleeting activities (*e.g.,* the review and sending of emails). *Id.* at 59. In total, by the Court's tabulation, approximately 4.6 hours billed by Walsh took the form of 0.10 hour increments in which the same timekeeper billed multiple such entries in a single day. To redress potential excessive billing flowing from this practice, the Court will deduct half of such reported hours (*i.e.*, 2.3 hours) from the aggregate hours of the timekeeper in question, Walsh.

The Court has reviewed the records of other timekeepers and has not found entries that are sufficiently duplicative as to warrant a reduction in total hours billed. For example, many of the 0.10 entries by Aughtmon occur on separate days—a practice that does not, by its nature, improperly over-inflate the number of hours—and for tasks that reasonably appear to take approximately 6 minutes. *See, e.g.*, Cuddy Decl., Ex. A at 26 (reporting time billed over three separate days in 0.10 hour increments each). The Court will award C.D. fees for such time.

***Overstaffing***: MVCSD alleges that the Cuddy firm staffed C.D.'s case with too many senior attorneys. There is of course nothing inherently wrong with staffing multiple attorneys on a case, a practice that is common to, *inter alia*, civil rights litigation. *See, e.g.*, *K.F.*, 2011 WL

3586142, at *6; *see also Rozell v. Ross-Hoist*, 576 F. Supp. 2d 527, 541 (S.D.N.Y 2008) (entirely appropriate to staff multiple attorneys at "critical points in the litigation" of a Title VII claim).

In the instant case, Walsh served as lead attorney, while Sterne and to a limited degree Cuddy, more senior and specialized attorneys, conducted discrete aspects of the case, such as questioning witnesses or reviewing briefs. The Court's assessment is that this allocation of labor was justifiable. The allocation of work allowed Walsh, who bills at a materially lower rate than Sterne or Cuddy, to conduct most of the litigation, while calling upon Sterne and Cuddy to assist when specialized expertise was needed. On the Court's review of the billing records, there are not clear instances in which duplicative work or excessive staffing occurred; the Court rejects MVCSD's contrary critique.[11]

***Excessive communication among counsel***: MVCSD claims that there was excessive communication between Walsh, Cuddy, and Sterne. A thorough review of the record, however, does not substantiate that objection. Most communication between C.D.'s attorneys took place around hearing dates and was targeted to specific tasks at which latitude is properly given for strategic communication among counsel. *See, e.g.*, Cuddy Decl. at 48 (reporting time billed by Walsh and Cuddy on January 15, 2016 and January 22, 2016, in connection with discussing C.D.'s disclosure and upcoming testimony and hearing dates). The billing records do not reveal the paradigmatically problematic practice in which excessive numbers of lawyers, some of

---

[11] For example, MVCSD objects to the fact that Cuddy, Sterne, and Walsh each reviewed the IHO decision. *See, e.g.*, Rushfield Decl. at 51 n.166 ("Paragraphs numbered 231 through 233 above evidence duplicative, and excessive billing for, services in that two senior attorneys (Cuddy and Sterne) and one junior attorney (Walsh) all separately reviewed the IHO decision, for a total of 2.2 hours among them."). There was nothing improper about the three lawyers reviewing the decision, as each's input as to potential avenues for appeal had obvious potential to add value.

whose presence is not demonstrably useful, bill for attending group meetings or auditing phone calls. The Court finds no cause to reduce C.D.'s counsels' reported hours on this account.

The Court therefore will reduce the number of hours billed by 2.3 hours of attorney Walsh, but otherwise does not find cause for further reductions for the billing deficiencies alleged.

### 2. Travel time

MVCSD objects to C.D.'s request for fees based on attorneys' travel time. Courts generally approve fees, at 50% of an attorneys' usual rate, for reasonable travel conducted in service of ongoing litigation. *K.F.*, 2011 WL 3586142, at *6; *see also Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 139 (2d Cir. 2008) (discussing how district court compensated at 50% rate for travel per "established court custom"). On this basis, C.D. seeks fees for Cuddy, Sterne, and Walsh's travel at half their hourly rates. *See* C.D. Br. at 13; Cuddy Decl., Ex. B.

While C.D.'s proposal to halve the attorney hourly rates for travel time is well-founded, a separate problem arises from the length of counsels' travels. As MVCSD properly notes, most of the travel at issue was between the IHO hearings, in Slate Hill, New York, and the Cuddy firm's headquarters, in Auburn, New York. This trip takes approximately three hours and 15 minutes in each direction. *See* Cuddy Decl., Ex. A.

That travel time is unreasonably far, by a good measure, to supply the basis for a fee-shifting award. C.D. was of course at liberty to hire the law firm of its choosing, including a distant law firm. But in pursuing the shifting of fees, the relevant issue is whether a hypothetical reasonable client would be willing to pay for the full hours of travel expended here. The Court's firm judgment is that he or she would not. The Court's judgment is that such a client would

either hire a much nearer firm qualified to handle the matter, or, if hiring a far-flung firm, ask the firm to absorb much of its travel time. The bid for reimbursement of the Cuddy Firm's extensive travel time is particularly problematic in that the Cuddy Law Firm is seeking (and receiving) billing rates keyed to this District, where the litigation was, as opposed to the lower rates prevalent in and around Auburn, New York. While a client in this District might be willing to pay for extended travel from an Auburn-based lawyer who charged Auburn rates, the Court is skeptical that a reasonable client would agree to pay its counsel rates customary for this District and for protracted travel time to and from Auburn.

The Court's judgment is that the properly reimbursable travel time here is one hour in each direction. This gives due deference to a parent's desire to hire expert IDEA counsel (it is not clear from the record what the range was of qualified IDEA counsel based near Slate Hill, New York) and to the inevitability of some travel time to the site of the hearing, particularly given the sometimes congested traffic conditions in southern counties in New York State such as Westchester. The Court therefore will reduce the number of hours for which C.D. seeks reimbursement by 70%.[12] The effect of this is to reduce the compensable travel time of Cuddy from 4.9 to 1.5 hours, Sterne from 41.4 to 11.52 hours, and Walsh from 68.05 to 20.4 hours.

### 3. IEP meeting hours

MVCSD next objects to C.D.'s request that his attorneys be compensated for the time they worked on non-judicially mandated IEP meetings.

---

[12] Apart from attending hearings, the billing records reflect that counsel engaged in other travel related to this case that took them from Auburn to Orange and Westchester Counties. This travel, too, would likely have been shorter had C.D. hired more proximate counsel. The Court accordingly reduces all travel hours for which reimbursement is requested by 70%.

The IDEA requires "public schools [to] create for each student with a disability a written individualized education program ('IEP') of study best suited to the child's special needs." *J.C.*, 278 F.3d at 121. "An IEP is typically prepared by an IEP Team, consisting of parents, teachers, and educational specialists who meet and confer in a relatively informal, collaborative process to determine how best to accommodate the needs of the disabled student." *Id.* Fees for the hours spent in IEP proceedings (other than those that are judicially mandated) are not covered under the fee shifting provision of the IDEA. 20 U.S.C. § 1415 (i)(3)(D)(ii); *J.C.*, 278 F.3d at 124 ("Congress deliberately chose not to allow the recovery of attorneys' fees for participation in IEP proceedings that were not convened as a result of an administrative proceeding or judicial action.").

Some reduction of hours is appropriate here to reflect time spent by counsel participating in such proceedings. The Court calculates that Walsh billed approximately 2.8 hours on IEP matters; Cuddy billed 0.5 hours; Sterne billed 0.10 hours; and Aughtmon billed 3.0 hours, for a total of 6.4 hours. *See* Cuddy Decl., Ex. A. The Court will reduce C.D.'s fee award by those 6.4 hours.

### 4. Fees incurred litigating before this Court

MVCSD also objects to C.D.'s request for fees incurred litigating before this Court. Courts, however, regularly award fees for federal court actions related to vindicating rights under the IDEA. *See, e.g.*, *J.S.*, 2011 WL 3251801, at *8 ("[R]equested fees for the federal action are reasonable."). The fees action here was necessitated by MVCSD's refusal to pay fees to C.D. as the prevailing party in the administrative proceedings, *see* Walsh Supp. Decl. ¶ 65, prompting the filing of C.D.'s Complaint, *see* Compl. ¶ 44. The record does not support that MCVSD made a

counter-offer as to fees (consistent with the fee award that the Court here finds warranted or otherwise).

The fees sought here are also proportionate to the limited subject of the federal court litigation, which concerns not the substantive issue of W.D.'s entitlement to a FAPE, but C.D.'s entitlement to a fee award for prevailing below. C.D. seeks $8,544.50 in fees for the district court litigation, Cuddy Decl., Ex. 6, a figure which the Court reduces to $7,410, to reflect the reduced billing rates addressed above. The Court will award such fees.

### D. Partial Success[13]

MVCSD also argues that C.D.'s fee award should be further reduced because C.D. was not 100% successful in the administrative phase of this matter. "[T]he most critical factor in determining the reasonableness of a fee award" is the degree of success obtained by plaintiffs' counsel. *See Farrar v. Hobby*, 506 U.S. 103, 114 (1992); *see also Kassim v. City of Schenectady*, 415 F.3d 246, 256 (2d Cir. 2005). Even where a party is properly considered "prevailing" under the first step of the attorney fee analysis, its award can still be reduced on account of the fact that the party achieved only partial success. The level of success refers not only to the success of specific claims, but also to the "'quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve' in bringing the action." *K.L.*, 2013 WL 4766339, at *11 (quoting *Barfield*, 537 F.3d at 152).

In this case, MVCSD is correct that C.D. did not achieve complete success in this litigation. C.D. abandoned, before the IHO had ruled on the merits, his claims regarding the 2015–16 school year. SRO Opinion at 11. C.D. also did not recover, even accounting for the

---

[13] The Court follows what appears to be the general practice in this district and does not reduce the costs awarded due to partial success. *See, e.g., T.K.*, 2012 WL 1107660, at *7 (awarding only 50% of attorney's fees incurred in the administrative proceeding but full costs).

upward adjustment awarded by the SRO, the full 160 hours of compensatory services initially sought before the IHO, obtaining instead 135 hours.[14]

In the Court's judgment, the areas in which C.D. did not achieve full success merit a modest (10%) reduction in the award of fees attributable to work performed during the administrative proceedings. This reduction primarily results from C.D.'s failure in the administrative proceedings to obtain relief as to one of the three school years that C.D. put at issue: 2015–16. For a number of reasons, however, MVCSD's apparent notion that the Court reduce the fee award by something like one-third is simplistic. It is impossible, in practice, to separate out the time spent pursuing the failed claim (for 2015–16) from the work done on the two preceding years, as to which C.D. secured relief. Indeed, much work that was done was globally relevant to all years—including as to developing a record with respect to the nature of C.D.'s condition, diagnosis, treatment, and educational needs, and as to developing and executing witness examinations (and preparing written submissions) on overarching points. Finally, that C.D., in the midst of the administrative proceedings, abandoned his claim as to the 2015–2016 year meant that the ensuing work (including on appeal to the SRO) did not implicate that year, but instead implicated only the two years as to which he achieved substantial success.

However, the Court declines to reduce the award for fees incurred during litigation before this Court. *See, e.g.*, *T.K.*, 2012 WL 1107660, at *7 (awarding full recovery of fees incurred before the district court despite imposing a 50% across-the-board cut on the fees incurred in the administrative proceedings). As this decision reflects, C.D. has overwhelmingly prevailed in pursuing recovery of fees, and has achieved his principal purpose in bringing this case in district court. While the Court has trimmed the proposed recovery in various respects,

_____

[14] On appeal, C.D. appears to have only requested 135 hours. *See* SRO Opinion at 45.

C.D., in the main, prevailed here as to fees, and it is impossible to isolate the limited legal work that could be said to be attributable to the discrete aspects of the fee litigation on which C.D. did not prevail before this Court.

### E.    Costs

As noted, C.D. seeks—in connection with the administrative proceedings—$5,064.50 for copies, $1,346.47 for meals, $1,721.54 for mileage, $3,745.76 for lodging, and $856.66 for serving process, postage, parking, and records fees. Cuddy Decl., Ex. B. In connection with litigation in this Court, C.D. seeks $149.50 in printing and process service costs. Cuddy Supp. Decl. Ex. B. MVCSD challenges as unreasonable the costs associated with travel—for mileage, lodging, and meals—but otherwise does not object to the application for costs. *See* Rushfield Affirmation ¶ 41.

A district court may award reasonable costs to the prevailing party in IDEA cases. 20 U.S.C. § 1415(i)(3)(B)(i)(l); *see K.L.*, 2013 WL 4766339, at *14 (holding costs requested reasonable); *S.W. ex rel. N.W. v. Board of Educ. Of City of New York*, 257 F. Supp. 2d 600, 607 (S.D.N.Y 2003) (holding costs of photocopying, faxing, word processing, travel, and meals reasonable). The Court's review of the cost items to which MVCSD does not object reveals no infirmities. The Court will award such costs.

MVCSD's objections to the Cuddy Firm's travel-related expenses, however, have merit. A prevailing party in IDEA litigation is entitled to recover for costs incurred during reasonable travel. *See S.W.*, 257 F. Supp. 2d at 607 (reasonable travel); *U.S. ex rel. Feldman v. Van Gorp*, No. 03 CIV 8135 WHP, 2011 WL 651829, at *5 (S.D.N.Y. Feb. 9, 2011) (unreasonable travel). For the reasons discussed above in connection with the billing of travel time, it is not reasonable to shift most of the Cuddy Law Firm's travel costs to MVCSD. Having determined that only a

one-hour—rather than three and a quarter-hour—trip to the site of the IDEA administrative

proceedings is properly compensable, the Court will make a proportionate reduction in mileage

costs, which appear largely to have been incurred traveling to and from the Cuddy Law Firm's

offices (or the lawyers' homes) and the hearings in Slate Hill. The Court will thus reduce the

requested mileage costs by 70%, from $1,721.54 for the administrative phase of the litigation to

$516.46.

The Court will similarly reduce the costs awarded for meals by 70%. The records

submitted by C.D. confirm that he seeks reimbursement for meals consumed around the IHO

hearing dates. Generally, meals that are not required by out of town travel are not compensable.

*L.V.*, 700 F. Supp. 2d at 528 ("[M]eals and hand deliveries are not compensable."). To the extent

that travel is reasonable, meals that are encompassed within the travel are also reasonable and

compensable. *See S.W.*, 257 F. Supp. 2d at 607 (holding $408.63 in costs including travel and

meals reasonable). Here, the Court concludes that approximately 30% of those meals were

required by the attorneys' reasonable travel. The IHO hearings took all day, and surely those

lawyers needed to each lunch during those days. However, more proximate lawyers surely

would have been able to return home and avoid paying for dinner at the IHO hearing location.

The Court, accordingly, awards costs for meals for 30% of the requested $1,346.47, and will

award $403.94.

For much the same reasons, the Court will not award any costs for lodging. An attorney

who was sited within a reasonable distance of the hearing location could commute daily to the

hearings, obviating any need for lodging. *Cf. K.F.*, 2011 WL 3586142, at *6 (no award of fees

for a three-night hotel stay between two hearing dates). A reasonable client, in the Court's

judgment, would not agree to pay in-district attorney rates while also paying for extensive

lodging expenses necessitated by out-of-district attorneys' travel. The Court therefore denies C.D.'s requests for lodging costs of $3,745.76.

## IV.    The Court's Award:  Bottom-Line Calculations

The charts below summarize the Court's awards of fees and costs, taking into account the rulings above. These include: (1) the hourly rates as determined by the Court, (2) the reductions for Walsh's excessive use of 0.10 billing entries, (3) the 70% reduction of travel hours from those recorded, (4) the elimination of hours billed in connection with IEP meetings, (5) the across-the-board 10% reduction in the total fee award in connection with the administrative proceedings; and (6) the Court's rulings as to permitted and disallowed costs.

| Attorneys' Fees: Administrative Proceedings | | | |
|---|---|---|---|
| **Attorney** | **Rate** | **Hours** | **Total** |
| Andrew Cuddy, Esq. | $400.00 | 14.20 | $5,680.00 |
| Jason Sterne, Esq. | $400.00 | 129.60 | $51,840.00 |
| Jacqueline Walsh, Esq. | $300.00 | 233.60 | $70,080 |
| **Preliminary Total** | | **377.4** | **$127,600.00** |
| **Total (after 10% reduction)** | | | **$114,840.00** |
| Paralegals' Fees: Administrative Proceedings | | | |
| **Paralegal** | **Rate** | **Hours** | **Total** |
| Diane Aughtmon | $125.00 | 41.70 | $5,212.50 |
| Shobna Cuddy | $100.00 | 12.70 | $1,270.00 |
| Sarah Woodard | $125.00 | 12.50 | $1,562.50 |
| **Preliminary Total** | | **66.90** | **$8,045.00** |
| **Total (after 10% reduction)** | | | **$7,240.50** |
| Attorneys' Travel Fees: Administrative Proceedings | | | |
| **Attorney** | **Rate** | **Hours** | **Total** |
| Andrew Cuddy Travel | $200.00 | 1.47 | $294.00 |
| Jason Sterne Travel | $200.00 | 11.52 | $2,304.00 |
| Jacqueline Walsh Travel | $150.00 | 20.42 | $3,063.00 |
| **Preliminary Total** | | **33.4** | **$5,661.00** |
| **Total (after 10% reduction)** | | | **$5,094.90** |
| Costs: Administrative Proceedings | | | |
| **Expense** | | **Total** | |
| Copy / page | | $5,064.50 (at cost of $0.50 per page) | |
| Meals | | $403.94 | |
| Mileage | | $516.46 | |
| Lodging | | $0 | |

| | |
|---|---|
| Process Server | $250.00 |
| Parking | $18.00 |
| Records Fee | $500.00 |
| Postage | $88.66 |
| **Total** | **$6,841.56** |

| Attorneys' Fees: SDNY | | | |
|---|---|---|---|
| **Attorney** | **Rate** | **Hours** | **Total** |
| Andrew Cuddy, Esq. | $400.00 | 2.3 | $920.00 |
| Jason Sterne, Esq. | $400.00 | 13.5 | $5,400.00 |
| Jacqueline Walsh, Esq. | $300.00 | 3.5 | $1,050.00 |
| **Total** | | **19.3** | **$7,370.00** |
| Paralegals' Fees: SDNY | | | |
| **Paralegal** | **Rate** | **Hours** | **Total** |
| Shobna Cuddy | $100.00 | 0.4 | $40.00 |
| Costs: SDNY | | | |
| **Expense** | **Total** | | |
| Printing | $39.50 | | |
| Process service | $110.00 | | |
| **Total** | **$149.50** | | |

## CONCLUSION

For the reasons reviewed above, Court awards C.D., as the prevailing party, a total of $141,576.46 in reasonable attorneys' fees and costs. The Clerk of Court is respectfully directed to close the motions pending at Dkts. 9 & 17.

The parties are directed, by one week from the date of this order, to submit a joint letter notifying the Court whether there are any other matters to be resolved, or whether the case can be closed.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: August 9, 2018
      New York, New York